IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| "ALAN H." and "CHERYL H.", Individually, and as Guardians Ad Litem for "DAVID H.", an incompetent minor, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF HAWAII, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

CV NO. 06-00212 DAE-LEK

<u>ORDER DENYING PLAINTIFFS' MOTION FOR DECLARATORY AND OTHER EQUITABLE RELIEF</u>

On September 10, 2007, the Court heard Plaintiffs' Motion For Declaratory and Other Equitable Relief.  Carl M. Varady, Esq., appeared at the hearing on behalf of Plaintiffs; Christine E. Savage, Deputy Attorney General, and Aaron H. Schulaner, Deputy Attorney General, appeared at the hearing on behalf of Defendant.  After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Plaintiffs' Motion as moot based on the futility of the relief sought without prejudice to Plaintiffs for future reimbursement requests. Notwithstanding that denial, the Court ORDERS Defendant, according to its mandate during the hearing, to reimburse Plaintiffs for David's private school

tuition during the 2005-2006 school year within 30 days of receipt of the invoices, pursuant to the stay-put provisions under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j).

BACKGROUND

Plaintiff David H. ("David") is a 16-year-old boy, born September 5, 1991, who qualifies for special education and related services for "autism" under IDEA. On February 23, 2004, David's parents, Plaintiffs Alan H. and Cheryl H., entered into a settlement agreement with Defendant. Pursuant to that agreement, Defendant agreed to reimburse or to pay the parents directly for David's education at the Variety School of Hawaii ("Variety School"), a private placement school, for the 2003-2004 school year, including the extended school year. Defendant also agreed to provide David a skills trainer for 20 hours per week and to provide him with curb-to-curb transportation from home to the Variety School during school days in exchange for dismissal of Plaintiffs' request for an impartial hearing. DOE also paid for David's private education at Variety Schools for the 2004-2005 school year.

On May 16, 2005, the State of Hawaii, Department of Education ("DOE") held an Individualized Education Program ("IEP") meeting at Kailua Intermediate School to discuss David's transition to high school, as he was going

2

to be turning 14-years old on September 5, 2005.  Following that meeting, DOE provided David's parents with a description of and an explanation for the proposed action in a Prior Written Notice of Department Action ("Prior Written Notice"). DOE proposed that David receive, among other services, a set number of minutes per week of special education until August 22, 2005 and a set number of minutes per week of special education from August 23, 2005 through May 16, 2006.  The Prior Written Notice clarifies that DOE would pay for private school services until August 22, 2005, and it would pay for public school services from August 23, 2005 until the end of the school year.

        Although Plaintiffs state in their motion that Kailua Intermediate School, a public middle school, is the school to which David was designated to attend during the 2005-2006 school year, that statement is inaccurate.  As clarified during the hearing and as the record reflects, on May 16, 2005, David was designated to attend Kalaheo High School, a public high school, given that he was about to turn 14-years old.  Kalaheo High School is the school that made the free appropriate public education ("FAPE") offering to implement the IEP plan for the 2005-2006 school year that was developed during the IEP meeting at Kailua Intermediate School.  David's father visited Kalaheo High School briefly before the May 16, 2005 meeting, but he did not have the opportunity to observe the

specific classroom or to speak to the teacher to which David would be assigned. The record does not reflect that David's father returned to Kalaheo High School after that brief visit or that David's mother visited it at any time. The parents had sought to have David attend Variety School for the 2005-2006 school year. Although the record reflects that the Variety School does not go past the eighth grade, it apparently does not follow a typical grade system and David may have been able to repeat the eighth grade (or somehow remain at that school for an additional year).[1]  DOE did not develop a specific plan for the transition from the Variety School to Kalaheo High School.

Before the 2005-2006 school year began, Act 158 was passed, amending Hawaii Revised Statutes ("Haw. Rev. Stat.") § 302A-443. Act 158 became effective on June 24, 2005. Haw. Rev. Stat. § 302A-443 now provides:

> (a) An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; provided that the hearing is requested:
>
> (1) Within two years of the date the parent, guardian, or department knew or should have known about the alleged

---

[1]     The record does not clarify whether David was going to repeat the eighth grade and/or take part in a more advanced program at Variety School. In any case, the 2005-2006 academic year would have been the last year that David could have attended Variety School.

action that formed the basis of the request for a hearing; and

(2) Notwithstanding paragraph (1), <u>within ninety days of a unilateral special education placement</u>, where the request is for reimbursement of the costs of the placement.

(Emphasis added.)

On July 7, 2005, David's parents rejected DOE's offer of a FAPE to attend Kalaheo High School for the 2005-2006 school year because the public education did "not meet the need of [their] son's ongoing service requirements and continued education." The parents also informed DOE that they were "evaluating potential choices of schools in the private sector which [we]re better suited to meet [David's] current and ongoing needs." On July 19, 2007, in a letter from DOE, Suzanne Mulcahy, the principal of Kailua Intermediate School, acknowledged Plaintiffs' rejection of DOE's offer for FAPE at the high school, advising them that "any placement at a private school for [David] will be considered a <u>unilateral placement and will be at your expense</u>." (Emphasis added.) The letter further instructed the parents that "[s]hould [they] wish the DOE to absorb the costs for tuition and all related expenses [they] <u>will need to file for a due process hearing</u>," while noting the "enclosed Parent and Student Rights in Special Education

brochure ["Procedural Safeguards Notice"]."  (Emphasis added).  The Procedural

Safeguards Notice contained a section that reads as follows:

> **Requirements for Parents Enrolling Their Children in Private Schools or Facilities at Public Expense.**
>
> The Department is <u>not required to pay for the cost of education</u>, including special education and related services, for a student with a disability at a private school or facility <u>if the Department made a free appropriate public education available to the student and the parents chose to place the student in the private school</u>. . . .
>
> If a parent disagrees with the Department regarding the availability of a free appropriate education in the public schools and has questions regarding the financial responsibility for the private placement, the parent may request a due process hearing.  <u>A hearing must be requested for reimbursement of the costs of the private placement within ninety (90) days of the parent's unilateral special education placement of the student in the private school or facility</u>.

(Emphasis added).  The Procedural Safeguards Notice did not specifically cite

Haw. Rev. Stat. § 302A-443 or mention Act 158, but it did include the 90-day

statute of limitations requirement.

When the regular school year for Variety School began around late

August 2005, the parents re-enrolled David for the 2005-2006 school year,

submitting an invoice to DOE for reimbursement.  On September 29, 2005,

Beverly S. Reidy, DOE District Education Specialist, returned the invoice for

6

placement at Variety School during that school year, stating that David's most current IEP noted that his placement at Variety School was only for the 2004-2005 school year, including the 2005 ESY.  She provided a telephone number should the parents have any questions.

By letter dated January 3, 2006 to the principal of Kalaheo High School, and received two days later, Plaintiffs' attorney, Carl M. Varady, requested an impartial due process hearing for reimbursement under 20 U.S.C. § 1415(f) and invoked the stay-put provisions under 20 U.S.C. § 1415(j) to maintain David's current educational placement during the pendency of the proceedings.[2]  On February 24, 2006, DOE filed a Motion to Dismiss or in the Alternative for Summary Judgment on the ground that Plaintiffs failed to file their request for a hearing within the 90-day statute of limitations pursuant to Haw. Rev. Stat. § 302A-443, which Motion was denied.

An administrative hearing was held on March 7-9, 2006, and, on March 21, 2006, the Hearings Officer filed his Findings of Fact, Conclusions of Law and Decision ("Findings").  The Hearings Officer found that Plaintiffs had failed to prove by the preponderance of the evidence that DOE denied David a

---

[2]     Plaintiffs' former attorney may have requested an earlier hearing on or about November 13, 2005, which the Hearings Officer noted as having been made on December 2, 2005.

FAPE.  In support, the Hearings Officer determined that Plaintiffs had failed to prove by a preponderance of the evidence that the May 16, 2005 IEP was inappropriate and, thus, that they were entitled to reimbursement.  The Hearings Officer made an additional finding that Haw. Rev. Stat. § 302A-443 barred Plaintiffs' claim for tuition reimbursement because Plaintiffs did not request reimbursement within 90 days from the date of the student's enrollment at the Variety School for the 2005-2006 term.  Notwithstanding the time-bar, the Hearings Officer determined that the stay-put provisions under Haw. Admin. R. § 8-56-79(a) "were automatically invoked and would be applicable until such time as a final decision is rendered, or an appeal completed."  Finally, among other findings, the Hearings Officer determined that the May 16 IEP plan was not deficient simply because it did not contain a transition plan from Variety School to Kalaheo High School.  Notably, the Hearings Officer concluded that both schools were willing to work together with Plaintiffs to develop a transition program to be implemented between May 16, 2005 (the date that the IEP plan was formed) and the start of the 2005-2006 school year.

Consequently, on April 19, 2006, Plaintiffs filed a Complaint in this Court, alleging violations of IDEA, Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("Section 504"), and 42 U.S.C.

§ 1983.[3]  On May 31, 2007, Plaintiffs filed the instant motion seeking declaratory relief under IDEA, and, on July 2, 2007, Defendant opposed the motion.  On July 16, 2007, Plaintiffs filed their reply.[4]

## STANDARD OF REVIEW

The IDEA states in part:

> any party aggrieved by the findings and decision made [pursuant to an administrative hearing], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

22 U.S.C. § 1415(h)(i)(2)(A).  When a party files an action challenging an administrative decision under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C.

---

[3]     As Plaintiffs note, the instant motion seeks relief pursuant to IDEA only.  They will pursue their remedies under the other statutes should their motion be denied.

[4]     On September 19, 2007, well after the hearing on the Motion, Plaintiffs' counsel filed a supplemental declaration on the issue of notice, indicating that DOE has adjusted its notice letter to clarify any confusion about when a hearing must be requested for reimbursement.  The Court will not consider that declaration because the contents of it do not alter the decision here.

§ 1415(h)(i)(2)(C); <u>see also</u> <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471 (9th Cir. 1993).  The party challenging the administrative decision bears the burden of proof.  <u>See</u> <u>Makiko D. v. State of Hawaii</u>, CV. NO. 06-00189, 2007 WL 1153811, at *4 (D. Haw. April 17, 2007); <u>Hood v. Encinatas Union Sch. Dist.</u>, 486 F.3d 1099, 1103 (9th Cir. 2007).

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." <u>Ojai Unified Sch. Dist.</u>, 4 F.3d at 1471.  As a modified <u>de novo</u> review, district courts have discretion concerning how much deference to give to state educational agencies.  <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987); <u>Susan N. v. Wilson Sch. Dist.</u>, 70 F.3d 751, 758 (3rd Cir. 1995).  Courts need not follow the traditional test that findings are binding if supported by substantial evidence or even a preponderance of the evidence.  <u>Id.</u>  A court may not, however, simply ignore the administrative findings.  <u>Ojai Unified Sch. Dist.</u>, 4 F.3d at 1474. Given the expertise of the administrative agency and the political decision to vest the initial determination with the agency, deference to the hearings officer is warranted in cases where the officer's findings are "careful and thorough."  <u>Id.</u> (citing <u>Kerkam v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988)); <u>Capistrano v.</u>

10

Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  In the end, district courts are free to determine how much deference to accord decisions of a hearings officer in light of the circumstances.  County of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).

## DISCUSSION

Plaintiffs seek a declaratory judgment that Act 158, effective June 24, 2005, was adopted without authority in violation of the Supremacy Clause of the United States Constitution; DOE failed to provide adequate notice under law and failed to comply with its own notice requirements under Hawaii Administrative Rules, Haw. Code R. § 8-56-69(a)(3) (Weil 2000); DOE violated the stay-put provisions under IDEA; equitable tolling should apply to these facts; and, even if the above arguments fail, Plaintiffs filed a timely request for a hearing.  Plaintiffs request remand for further consideration by the Hearings Officer.

Defendant refutes those arguments, and it adds one more.  Before deciding whether to proceed, Defendant contends that the Court lacks jurisdiction because Plaintiffs have not established an actual case-or-controversy to justify the entry of declaratory judgment.  Thus, before addressing Plaintiffs' arguments, the Court first must determine whether the Court has jurisdiction to entertain them.

11

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). That is a discretionary determination that a court may make only if the suit presents an actual case-or-controversy, fulfills statutory jurisdictional prerequisites, and is an appropriate action to consider. See Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998). "To establish that a particular declaratory action presents an actual case-or-controversy, a party is required to show that, under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1990); see also O'Shea v. Littleton, 414 U.S. 488, 493-94 (1974); Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). Similar to standing, there must be some injury-in-fact, United States v. Ensign, 491 F.3d 1109, 1116 (9th Cir. 2007), and a declaration must affect substantive legal rights of the parties. Mason v. Genisco Tech. Corp., 960 F.2d 849, 853 (9th Cir. 1992).

12

Defendant argues that there is no case-or-controversy because, should the Court find that Act 158 was enacted without authority, thus invalidating the 90- day statute of limitations, the Court still would be bound by the Hearings Officer's finding that Defendant provided Plaintiffs with a FAPE.  Consequently, even if the Court were to remand the case, Plaintiffs still could not recover because the Hearings Officer's finding that Plaintiffs were offered a FAPE would stand. Plaintiffs respond that, should the Court find that Act 158 was unconstitutionally adopted, Plaintiffs somehow would have a lesser burden upon remand, presumably to prove that a FAPE was not in fact offered, without describing how that burden would be different or why it would be lessened.

The Court does not view the issue as one of "case-or-controversy" because Plaintiffs have alleged an injury in fact that is immediate and real resulting from DOE's refusal to reimburse them for the costs of David's private school education.  Indeed, a substantial controversy exists between Plaintiffs and Defendant surrounding that refusal.  Rather, Defendant appears to argue that remanding the case would be futile, and thus a declaratory judgment should not issue, because, upon remand, Plaintiffs would not be entitled to any effective relief

based on the Hearings Officer's finding of a FAPE.[5]  As such, the issue pertains

more to mootness based on the futility of the effective relief than to an absence of a

case-or-controversy, although such principles may be intertwined.  See 13A C.

Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.1 (Supp.

2007).

   "Even when the moving party is not entitled to dismissal on article III

grounds, common sense or equitable considerations may justify a decision not to

decide a case on the merits."  In re AOV Indus., Inc., 792 F.2d 1140, 1147 (D.C.

Cir. 1986); see generally Wright, Federal Practice and Procedure § 3533.

"Determinations of mootness in this latter sense cannot be cabined by inflexible,

formalistic rules, but instead require a case-by-case judgment regarding, the

feasibility or futility of effective relief should a litigant prevail."  In re AOV Indus.,

Inc., 792 F.2d at 1147-48.  The determination, therefore, is a fact intensive one,

involving the intertwinement of legal and constitutional principles with "openly

---

   [5] Additionally, during the Motion's hearing, Defendant did not dispute application of IDEA's stay-put provisions that would entitle David's parents to reimbursement for the cost of David's tuition at Variety School during the 2005-2006 school year.  See 20 U.S.C. § 1415(j).  In fact, during the hearing, Defendant agreed to reimburse the parents upon receipt of the invoices pursuant to the stay-put provisions, which invoices Plaintiffs had not submitted to Defendant.  Based on that agreement, the Court ordered Defendant to pay the invoices within 30 days of receipt, pursuant to IDEA's stay-put provisions.

discretionary doctrines of remedial utility and judicial administration." Vestcom

Intern., Inc. v. Chopra, 114 F. Supp. 2d 292, 299 (D.N.J. 2000) (citing Wright,

Federal Practice and Procedure  § 3533, at 211).  The mootness doctrine may be

invoked to deny a declaratory judgment where the benefits of issuing such a

judgment are too slight to justify the decision.  See Wright, Federal Practice and

Procedure § 3533.1, at 215.  Indeed, under mootness principles, "[t]he discretionary

power to withhold declaratory relief, even in a case of actual controversy, is as well

established as the discretionary power to withhold injunctive relief."  Id. at 218.

Thus, based on the nature of Defendant's argument, the Court will address the issue

with an eye toward mootness.

        The purpose of IDEA is "to ensure that all children with disabilities

have available to them a free appropriate public education that emphasizes special

education and related services designed to meet their unique needs and prepare

them for further education, employment, and independent living[.]"  20 U.S.C.

§ 1400(d)(1)(A) (emphasis added).  To do so, State educational agencies, such as

DOE, receiving assistance must follow certain "procedural safeguards with respect

to the provision of a free appropriate public education by such agencies."  20 U.S.C.

§ 1415(a).  DOE noted such provisions in its Procedural Safeguards Notice,

providing that it was "not required to pay for the cost of . . . special education and

related services[] for a student with a disability at a private school or facility <u>if</u>

<u>[DOE] made a free appropriate public education available</u> to the student and the

parents chose to place the student in the private school."   (Emphasis added.)  DOE

enclosed the Procedural Safeguards Notice with the July 19, 2007 letter sent to

David's parents, advising them that "any placement at a private school for [David]

will be considered a <u>unilateral placement and will be at your expense</u>."

Consequently, so long as a disabled child is offered a FAPE, DOE is not required to

provide reimbursement for a private school education.

The Hearings Officer determined that Plaintiffs "did not prove by a

preponderance of the evidence that [David] was not provided with FAPE."

Plaintiffs bore the burden of proof during the administrative hearing, and they bear

the burden of proof here to contest the validity of the Hearings Officer's FAPE

finding, as the party challenging the administrative decision.  Plaintiffs have failed

to set forth any arguments that would challenge the Hearings Officer's findings

concerning the appropriateness of the free public education offered.[6]  The Court

---

[6]     To be sure, the parents rejected the FAPE on the ground that it did not
meet David's needs, thus prompting their decision to enroll David in a private
school program.  Nonetheless, the arguments contained in the instant motion
address the Hearings Officer's findings and conclusions concerning the 90-day
statute of limitations, not those surrounding the FAPE.

notes that the Hearings Officer made that finding after holding a three-day evidentiary hearing on the issue of a FAPE, among other issues, permitting testimonial and documentary evidence and a full opportunity for direct, cross, redirect, and re-cross.  In essence, Plaintiffs request a second bite at the apple through an additional hearing upon remand to prove that the free public education offering was inappropriate, without presenting the Court with any reason to justify that second bite.

Plaintiffs indicate that the burden to disprove the appropriateness of the free public education might be different upon remand if the Court were to find Act 158 unconstitutional.  For a reason that is unclear to the Court, Plaintiffs are under the impression that, upon remand, they would <u>not</u> have to prove the absence of a FAPE by a preponderance of the evidence.   The Court does not see why the alleged unconstitutionality of a statute that affects the <u>time</u> during which to file a request for a hearing, not the <u>contents</u> of the hearing, would affect the burden on a factual point to be proven at the hearing.  Plaintiffs might take issue with the way in which the Hearings Officer conducted the hearing, arguing that they did not receive the full process that was due to them (which they arguably would have received had the 90-day statute of limitations not interfered).  Still, Plaintiffs fail to note any inadequacies in the three-day hearing that would suggest that the process that they

17

received was deficient or would have been different under changed circumstances. Indeed, after receiving a full three-day hearing on the matter, during which time Plaintiffs had the opportunity to prove that the public education that was offered was inappropriate, they failed in their burden of proof, which burden would remain the same (or at least similar) upon remand.

Plaintiffs rely on Makiko D. to prove their point, but Plaintiffs are misguided in their application of that case.  Unlike here, in Makiko D., the Hearings Officer made a finding that DOE failed to provide a FAPE for the 2004-2005 school year and the Hearings Officer had not had the opportunity to hold a hearing on whether DOE offered a FAPE for the 2005-2006 school year because he had concluded that the plaintiffs' request for a due process hearing was barred by the 90-day statute of limitations.  See 2007 WL 1153811, at *1, 3.  On appeal to this Court, Judge Michael Seabright found that the plaintiffs had not received the requisite notice for reimbursement of the child's related services.  See id. at *5. Still, with a notice letter that was nearly identical to that provided here, he found that the plaintiffs received the requisite notice for reimbursement of the child's tuition.  See id. at *2, 5.  Because the plaintiffs were allowed to seek reimbursement for the child's related services during the 2005-2006 school year, and the Hearings Officer had not made a FAPE finding for that year, Judge Seabright remanded the

18

case, as necessary, for the Hearings Officer to make that finding, among others.  See id. at *10.  By contrast, as the Hearings Officer in the instant case  made a specific finding that the free public education offered for the 2005-2006 school year was appropriate after holding a hearing on the matter, remand would be unnecessary under these circumstances.

To elaborate, the Hearings Officer provided two bases for his FAPE finding:  (1) the May 16, 2005 IEP was appropriate (as Plaintiffs failed in their burden of proving otherwise), and (2) Plaintiffs' request for an impartial hearing to claim tuition reimbursement was time-barred under Haw. Rev. Stat. § 302A-443.  From that, even if the Court were to reach a decision on the constitutionality of Act 158 that created the time-bar at issue, thus possibly negating the second basis for the FAPE finding, the first basis still would stand, blocking Plaintiffs' remedy upon remand.[7]   If the second finding served as the sole basis for the Hearings Officer's determination, then a decision concerning the constitutionality of Act 158 would be necessary because, if found unconstitutional, a remedy could be had upon remand.  In other words, the Hearings Officer's FAPE finding would not stand because the

_____

[7]      Plaintiffs' remedy also is questionable given that Defendant has agreed to reimburse Plaintiffs for David's tuition at Variety School for the 2005-2006 school year pursuant to IDEA's stay-put provisions.  See discussion supra n.4.

only foundation for that finding would be removed.  The second finding did not, however, serve as the sole basis.  Another and more crucial finding was made: that the May 2005 IEP, including the free public education offering, was in fact appropriate.

Although Plaintiffs have failed to prove how further consideration upon remand would change the Hearings Officer's finding concerning the offer of a FAPE, because a modified <u>de novo</u> review is appropriate, the Court will set forth some of the evidence from the record, based on its independent review, that has persuaded the Court to uphold the Hearings Officer's FAPE finding.[8]  In doing so, the Court will defer to the Hearings Officer's findings, within its discretion, when they are "careful and thorough" while considering all of the circumstances of the case.

DOE continued to pay for David's special education at Variety School as late as 2004-2005.  Because David was about to enter high school, the parents were informed via a meeting announcement that an IEP meeting would be held at Kailua Intermediate School to assess David's educational for the 2005-2006 school year.  David's parents attended the meeting, along with the director of Variety

---

[8]     For present purposes, the Court will set aside Plaintiffs' burden of proof on their appeal of the administrative decision.

School, a teacher from Variety School, the chair of the special education department at Kalaheo High School, and a speech pathologist at Kalaheo High School, among others.

Based on that meeting, the IEP team concluded that David should receive special education and related services on a public school campus, where he would be assigned to special education classrooms.  Later testimony by Barbara Taylor, the chair of the Special Education Department at Kalaheo High School, indicated that David would be assigned to one teacher for his core classes in a self-contained classroom from which he would be removed for elective instruction.  The IEP team determined that David should receive a reduction in speech language therapy from 90 minutes to 30 minutes; David ultimately was provided 60 minutes of speech therapy per week, about which Plaintiffs primarily complain.  The IEP team also proposed terminating David's one-on-one skills training, replacing it with group skills training, according to a change in DOE's policy.  Plaintiffs were concerned with those changes, along with DOE's ability to implement the IEP plan at a public school such as Kalaheo High School, prompting them to reject Kalaheo High School's offering.

Based on the record, Plaintiffs concern was not well-founded.  David's father had visited the Kalaheo High School briefly before the May 16, 2005

meeting.  At that time, he had not had an opportunity to visit David's future home room/classroom or to meet with David's teacher, and the record does not reflect that he returned to the school again.  Nor did David's mother visit the school.

According to the testimony of David's father during the administrative hearing, his basis for rejecting the May 2005 IEP came from two sources:  (1) information obtained during an IEP meeting held before May 2005, though he was not sure when that meeting occurred and he did not provide any specifics about discussions that had occurred during it, and (2) a meeting that occurred at some point with Ms. Taylor, though he did not provide any specifics about why, based on that meeting, he believed that Kalaheo High School would not be able to meet David's needs.

Significantly, the previous IEP meeting, identified as the first source of information, likely took place in regard to David's 2004-2005 IEP plan (or, at least, while David was still in the intermediate school setting), during which time the IEP team did not believe that a transition to the public intermediate school setting would be in David's best interest.  The IEP team specifically found that David was progressing in his present setting and they did not want to interrupt David's emotional consistency for the remainder of his intermediate level education, which likely would have occurred had he been forced to change middle schools.  By contrast, a transition from middle school to high school would alter that consistency

22

regardless of the school, whether private or public.  If a change from private to public school were to occur, the shift from eighth to ninth grade would be a prime time to make that change so that David would not have to adjust to a new environment and new peers twice.  As such, the reasons underlying the IEP team's earlier decision to keep David in a private school setting while David still was in the intermediate school setting would not support the parents' belief that a public education would be inappropriate for David upon his transition to high school, as changing circumstances had to be considered.  Additionally, as noted in the May 16, 2005 IEP, David had expressed an interest in attending college after high school to pursue art or music.  That factor likely would have been taken into account in the decision to send David to a public school to help his adjustment to college post-graduation, where he likely would be placed in an environment with non-disabled peers.

Moreover, Ms. Taylor testified during the administrative hearing that Kalaheo High School was fully equipped to implement the IEP plan based on the services available at the school.  Among other things, she testified that the group skills trainer services would have provided David with the same type of services that he had been receiving from his one-on-one training at Variety School, thus dispelling the parent's concern related to those services.  She also testified that,

typically, students at a high school level are comfortable with 30 minutes of speech language therapy a week, but that number could be adjusted based on the needs of the child.  Based on David's needs and the IEP plan, Kalaheo High School offered David 60 minutes of speech language therapy a week (30 minutes of pullout and 30 minutes of group), which, according to Ms. Taylor's testimony, was the same amount of services that Variety School recommended.  Moreover, David would be assigned to one teacher for his core classes while having an opportunity to branch out for his elective classes.  The record further reflects that the Variety School and Kalaheo High School were willing to work together to develop a process to help David transition from the private intermediate school setting to the public high school setting before the start of the 2005-2006 school year.  Overall, Ms. Taylor testified that Kalaheo High School made a free, appropriate public education offering, and neither the record nor Plaintiffs present any reason to challenge the appropriateness of that offering.

Crediting Ms. Taylor's testimony, as the Hearings Officer did, and considering the evidence in the record and the circumstances as a whole, the Court sees no reason to reverse the Hearings Officer's findings and conclusion related to the offer of FAPE or to believe that further consideration upon remand would change that result.  As the Hearings Officer's FAPE finding would stand upon

24

remand, the Court in its discretion withholds declaratory relief because remand for effective relief would be futile.  Accordingly, the Court DENIES Plaintiffs' Motion as moot.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Plaintiffs' Motion as moot.  Based on Defendant's concession during the Motion's hearing that IDEA's stay-put provisions apply and, according to those provisions, its agreement to pay Plaintiffs for the cost of David's private school tuition during the 2005-2006 school year, the Court ORDERS Defendant, according to its mandate during the hearing, to reimburse Plaintiffs for David's private school tuition during the 2005-2006 school year within 30 days of receipt of the invoices pursuant to the stay-put provisions.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 24, 2007.



_____
David Alan Ezra
United States District Judge

<u>"Alan H.," et al. vs. State of Hawaii</u>, Civil No. 06-00212 DAE-LEK; ORDER DENYING PLAINTIFFS' MOTION FOR DECLARATORY AND OTHER EQUITABLE RELIEF